IA2KMAT1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4           v.                              18 CR 124 (JPO)

5  LEONARD MATHEWS,

6               Defendant.

7  ------------------------------x

8                                          New York, N.Y.
                                           October 2, 2018
9                                          9:55 a.m.

10 Before:

11                 HON. J. PAUL OETKEN,

12                                         District Judge
                                           -And a Jury-
13

14                     APPEARANCES

15

   GEOFFREY S. BERMAN,
16      United States Attorney for the
        Southern District of New York
17 JUSTIN V. RODRIGUEZ
   DOMINIC GENTILE
18 EMIL BOVE
        Assistant United States Attorneys
19
   BRUCE K. KAYE
20      Attorney for Defendant

21
   ALSO PRESENT:
22
   SABRINA PARISI, USAO Paralegal
23 ELVIS COLE, NYPD

24

25

IA2KMAT1

1                    (In open court; jury not present)

2                    THE COURT:  Good morning.

3                    COUNSEL:  Good morning, your Honor.

4                    THE COURT:  We received a note from the foreperson of

5      the jury this morning.  It's been marked Court Exhibit No. 4.

6      It's from 9:42 this morning, and it just says:  "Judge Oetken,

7      good morning.  All the jurors have arrived, and we have started

8      to deliberate."  Signed Juror 44, the foreperson.

9                    And I understand that we're still having A/V issues

10     with the larger screen, but the laptop is operative, as I

11     understand it, and there is a sheet of instructions, just to be

12     clear, for the jury about how they're able to view exhibits on

13     the laptop.

14                   Based on that, I think the sheet of instructions went

15     back to the jury.  Is that right?

16                   MR. RODRIGUEZ:  That's right, Judge.

17                   THE COURT:  Okay.

18                   Is there another note?

19                   THE DEPUTY CLERK:  Yes.

20                   THE COURT:  Okay.

21                   We just received another note, which will be Court

22     Exhibit No. 5:  "Judge Oetken, the jury has a question

23     regarding elements (1) through (3) of racketeering activity for

24     Counts One, Two and Three.  It states that the government must

25     prove that:  (1) the enterprise existed; (2) the Bloods engaged

IA2KMAT1

1    in racketeering; (3) interstate commerce was affected.

2         "Do these apply to the Bloods generally or to the

3    specific alleged crimes/counts?"

4         MR. KAYE:  Judge, before we get to this latest note,

5    was the Court going to respond substantively to that portion of

6    yesterday's note that requested a definition of racketeering?

7    I believe the jury said that they had some questions about

8    that.

9         THE COURT:  Well, my understanding was that they said,

10   "We have some questions about the laws explained, specifically

11   related to the definition of racketeering.  Who can clarify

12   this for us?"  I didn't think that was a specific question.  I

13   think this was the question.  The note from this morning is the

14   question referred to in yesterday's note, I assume.

15        MR. KAYE:  I know the Court is going to respond

16   substantively to this morning's note, but when the Court does

17   that, can the Court make it clear that this morning's note is

18   just in connection with that part of yesterday's note, so we

19   make sure that we respond substantively to yesterday's note?

20        THE COURT:  Yes.  I can say:  "I'm assuming that the

21   question you referred to in yesterday's note is the same as the

22   one from today, but if there's something else from yesterday,

23   please ask that in another note."

24        MR. KAYE:  Thank you.

25        THE COURT:  Let me read today's note once again.  The

IA2KMAT1

time was 10:00 o'clock, and it's Court Exhibit 5.  I'll read it

again:  "The jury has a question regarding elements (1) through

(3) of racketeering activity for Counts One, Two and Three.  It

states that the government must prove that:  (1) the enterprise

existed; (2) the Bloods engaged in racketeering; (3) interstate

commerce was affected.

"Do these apply to the Bloods generally or to the

specific alleged crimes/counts?"

Do you understand the question?  I'm not sure I do.

MR. RODRIGUEZ:  A couple of reactions, your Honor:

I think with respect to the first element, the

question of whether the enterprise existed, it should be made

clear to the jury that that is a question that does not rely

on, or is not dependent on, the specific violent crimes in aid

of racketeering charged.  That's with respect to the first

element.

The second element, that the enterprise engaged in

racketeering activity or activities:  Here, some of the

racketeering activities alleged include the violent crimes that

are at issue, specifically the attempted murder, a conspiracy

to commit murder of Isaac Toribio.  Maybe that's sort of one of

the areas where they want clarification on, that it could be

both something that goes to the second element as well as the

fourth element, for example, in Counts One, Two and Three.  But

I think the Court should also remind the jury that there are

IA2KMAT1

1    other racketeering activities alleged, such as the narcotics

2    trafficking and the attempted murder and conspiracy to commit

3    murder of Ciara Edwards, that are not the specific violent

4    crimes in aid of racketeering.

5         THE COURT:  What about "interstate commerce was

6    affected"?

7         MR. RODRIGUEZ:  Your Honor, can we actually take a few

8    minutes, just to make sure that we've got this entirely

9    correct?

10        THE COURT:  Yes, why don't you.  In fact, why don't I

11   give the parties a copy of the note, and you all can confer and

12   try to maybe come up with some language that I can review.

13   Does that make sense?

14        MR. RODRIGUEZ:  Very good, your Honor.  Yes.

15        THE COURT:  I'll step off the bench, and Mr. Hampton

16   will bring you copies of the two notes that raise racketeering.

17        MR. KAYE:  Okay.

18        MR. RODRIGUEZ:  Thank you, Judge.

19        (Recess)

20        THE COURT:  Give me a minute.  I just want to retype

21   the version that you all are working from, and we can discuss

22   it.

23        Do you have the ability to email me this?  No, right?

24        MR. RODRIGUEZ:  Unfortunately, we don't, your Honor.

25        THE COURT:  Okay.

IA2KMAT1

1          (Pause)

2          THE COURT:  Just so we're clear on the record on what

3    everyone's position is, I'll read into the record what was

4    proposed to me, which I believe is something the parties do not

5    agree on the first sentence but do agree on the rest.  Is that

6    right?

7          MR. RODRIGUEZ:  Correct.

8          THE COURT:  Here is what has been proposed in response

9    to the question about racketeering:  "The first three elements

10   for Counts One, Two and Three relate to the government's

11   allegations regarding the activities of the Bloods gang in

12   general rather than the specific violent crimes alleged in

13   general.  Specifically, for Counts One, Two and Three, the

14   government must establish:

15          "On element one, that there was a racketeering

16   enterprise;

17          "On element two, that the racketeering enterprise

18   engaged in at least one racketeering activity.  And, here, the

19   activities are:  Attempted murder, conspiracy to commit murder

20   and drug-dealing, as I defined those crimes;

21          "And on element three, that the activities of the

22   Bloods racketeering enterprise affected interstate commerce.

23   When you evaluate these elements you may consider all of the

24   evidence admitted during the trial."

25          Did I get that right?

IA2KMAT1

1              MR. KAYE:  I admittedly don't have the language in

2        front of me.

3              MR. RODRIGUEZ:  That was the proposal, your Honor,

4        yes.

5              THE COURT:  Okay.

6              MR. KAYE:  My objection to the first part of it is

7        that it seems as if the jury is looking at the distinction

8        between the umbrella nation, United Bloods Nation, and the

9        Gangsta Milla Bloods, which is undoubtedly the subject of this

10       prosecution.  The UBN is not on trial; the local set and their

11       misconduct is on trial.

12             So to respond to the note by instructing the jury that

13       they can find racketeering acts within or against the umbrella

14       entity, I don't believe is appropriate.  I'm not suggesting any

15       particular language to the Court or the government.  I'm only

16       suggesting that it be made clear that their focus has to be the

17       evidence that they were given, and that evidence is of

18       racketeering acts and drug-dealing within that area of East

19       Kingsbridge Road, Creston, Morris, and Jerome.  They have no

20       evidence as to any specific narcotics purchase or sale or

21       violent act that was ever committed by anyone associated within

22       the umbrella entity.

23             So my request is to make that very clear to the jury

24       that they are to consider the first three elements of the first

25       three charges with regard to the evidence they've been given as

IA2KMAT1

1     applied to the local set.

2             THE COURT:  I don't really read the question as

3     focusing on that distinction so much as the distinction between

4     the specific crimes alleged, that is, the alleged attempted

5     murder of Toribio and whether that is what they're supposed to

6     be considering or any narcotics activity proven.  I don't know

7     that any Bloods activity was established at trial other than

8     GMB, Gangsta Milla Bloods, activity at all.  So I don't know

9     that that is of salient distinction in terms of the question.

10            But I'll let you respond.

11            MR. KAYE:  But the jury -- before

12    Mr. Rodriguez does -- has heard about the Bloods Nation, and in

13    my summation I did say, I'm sure the Bloods, as a group, have

14    engaged in all kinds of horrible crimes, but that's not what

15    we're talking about here, we're talking about -- and I tried to

16    focus them on what's happening in that part of the Bronx.

17            So it is a potential area of confusion for them, as to

18    whether or not they should be considering any acts of the

19    broader entity.

20            THE COURT:  Okay.

21            MR. RODRIGUEZ:  Your Honor, I agree with you.

22            First of all, the government did not offer any broad

23    evidence of violent crimes committed by the Bloods nationwide.

24    For example, no one took the stand and testified to a hundred

25    murders committed by the United Bloods Nation last year

IA2KMAT1

1    throughout the United States.  That's absolutely not what

2    happened.

3            I agree that the question here is focused on the

4    enterprise versus the predicates of the violent crimes alleged.

5    I don't think there's anything in the question that's trying to

6    draw this distinction between the Bloods and the Gangsta Milla

7    Bloods.

8            I'd also remind the Court, as the Court is well aware,

9    that the entirety of the Court's charge didn't draw this

10   distinction between the Bloods and the Gangsta Milla Bloods.

11   That's because the Bloods is the alleged enterprise in the

12   indictment.  So to start drawing the jury's attention to that

13   now, we think, would cause great confusion, and it doesn't seem

14   to be the actual issue that they're focused on.

15           THE COURT:  Yes, I agree with that.

16           MR. KAYE:  Just for the record, I did, at the

17   beginning of the trial, make certain jury charge requests that

18   the word "Bloods," meaning the umbrella entity, be deleted from

19   the charge and that we instead focus on the local set.

20           THE COURT:  Okay.  Fair enough.

21           I still want to tweak the language, I think.  That's

22   because it's still a little confusing because I think you have

23   to distinguish between the actor and the activities.  With

24   respect to the actor, the answer is clearly the Bloods in

25   general, but as to the activities, it's a hybrid, so some of

IA2KMAT1

1   the predicates are things that were arguably the basis of the

2   crimes themselves.  It's a little confusing because it's like a

3   crime within a crime of the element.

4           I was thinking of saying:  "The first three elements

5   for Counts One, Two and Three relate to the government's

6   allegations regarding the Bloods gang, as opposed to the

7   activities of the Bloods gang, in general."  And then provide

8   some clarity in the next sentences.  I wasn't going to say,

9   "rather than the specific violent crimes," because I don't want

10  to divert their attention, because actually the specific crimes

11  may be predicates under element two.  So let me try this:

12  "Specifically, for Counts One, Two and Three, the government

13  must establish, on element one, that there was a racketeering

14  enterprise."  "That there was."

15          "On element two" -- maybe I'll break this out -- "On

16  element two, the government must establish that the

17  racketeering enterprise engaged in at least one racketeering

18  activity.  And, here, the activities alleged are attempted

19  murder, conspiracy to commit murder, and drug-dealing, as I

20  defined those crimes."

21          I was about thinking about adding a sentence here that

22  says:  "If you find any of those beyond a reasonable doubt, you

23  have found the element of racketeering activity, whether or not

24  it is the same as one of the alleged violent crimes alleged."

25  I'm trying to think of a better way to say that that's not more

IA2KMAT1

1    confusing than helpful, because here I think the possibility is

2    narcotics activity, whether it's alleged or not, of the Bloods,

3    whether it's part of what's specifically alleged as to

4    Mr. Mathews or not.  The attempted murder of Toribio and the

5    attempted murder of the alleged attempted murder of Edwards,

6    is, I think, what was argued as possible predicates for

7    racketeering activity.

8           MR. RODRIGUEZ:  Your Honor, we're in agreement with

9    the Court entirely as far as the proposal so far.

10          In terms of a possible clarifying sentence to insert

11   here, we propose something like the following, with respect to

12   the second element:  "On this second element, you may consider

13   the evidence relating to the attempted shooting of Isaac

14   Toribio when you consider this element, as well as any other

15   evidence relating to separate acts of violence and drug-dealing

16   by the Bloods that was admitted during the trial," something

17   like that.

18          THE COURT:  Could you repeat that one more time?

19          MR. RODRIGUEZ:  Absolutely.  "On this second element,

20   you may consider the evidence relating to the attempted

21   shooting of Isaac Toribio when you consider this element" --

22          THE COURT:  "You may consider -- when you consider

23   this element."  Okay.

24          MR. RODRIGUEZ:  -- "as well as any other evidence

25   relating to separate acts of violence and drug-dealing" --

1       THE COURT:  Hold on.  "Relating to any"?

2       MR. RODRIGUEZ:  How about:  "As well as any other

3  evidence relating to additional acts of violence and

4  drug-dealing by the Bloods that was admitted during the trial."

5       THE COURT:  "Any additional acts of violence" -- is it

6  "any violence" or doesn't it have to be "attempted murder and

7  conspiracy to murder"?

8       MR. RODRIGUEZ:  The Court's correct; yes.

9       THE COURT:  "Any additional acts of attempted murder

10  or conspiracy to murder."  And where did it go from there?

11       MR. RODRIGUEZ:  "And drug-dealing by the Bloods."

12       THE COURT:  "Or drug-dealing"?

13       MR. RODRIGUEZ:  "Or drug-dealing by the Bloods that

14  was admitted during the trial."

15       THE COURT:  And then for Count Three:  "The government

16  must prove that the activities of the Bloods racketeering

17  enterprise affected interstate commerce"?

18       MR. RODRIGUEZ:  And I think, your Honor, it might be

19  worth reiterating at this point to the jury, "When you evaluate

20  these elements, you may consider all of the evidence admitted

21  during the trial."

22       THE COURT:  Mr. Kaye?

23       MR. KAYE:  In reverse order.  I don't think it should

24  say with regard to the Bloods, when they're determining the

25  interstate commerce element; that should be with regard to the

IA2KMAT1

1    Gangsta Milla Bloods.

2             Also, I think the Court is leaving out the conspiracy

3    and the assault.  Those arguably also would be predicate acts.

4    I don't know if you wanted to include those or not.

5             THE COURT:  Is the assault, aiding and abetting

6    assault, also a possible predicate act?

7             MR. KAYE:  I believe it is.

8             MR. RODRIGUEZ:  Your Honor, just to be very clear,

9    when we're talking about -- when I mentioned predicate acts

10   before, I was referring to element four of Counts One, Two and

11   Three, the violent crimes in aid of racketeering.

12            So the assault is a violent crime in aid of

13   racketeering.  It is not, however, a racketeering activity,

14   because the phrase is "acts involving murder."  So --

15            THE COURT:  Right.  So it's conspiracy to commit

16   murder and --

17            MR. RODRIGUEZ:  Attempted murder.

18            THE COURT:  -- attempted murder but not --

19            MR. RODRIGUEZ:  Right.

20            THE COURT:  That's what I've covered.

21            MR. RODRIGUEZ:  Correct.

22            MR. KAYE:  Okay.  I understand.

23            And then with regard to drug-dealing, are we going to

24   just tell the jurors that any acts of drug-dealing,

25   essentially, that they've heard evidence of, or any acts of

IA2KMAT1

1   drug-dealing committed by the defendant or by Bigz Milla?  For

2   example, they've only heard of drugs being sold by the

3   defendant, and then on two occasions, he told one of the buyers

4   that "Bigz Milla has my work."

5           THE COURT:  But I think all they need to find is that

6   it's of the Bloods for it to be racketeering activity by that

7   enterprise.

8           MR. KAYE:  So can you just read that language?

9           THE COURT:  Yes.

10          "On element two, the government must prove that the

11  racketeering enterprise engaged in at least one racketeering

12  activity.  And, here, the activities are attempted murder,

13  conspiracy to commit murder, and drug-dealing, as I defined

14  those crimes.

15          "On the second element, you may consider the evidence

16  relating to the attempted shooting of Isaac Toribio when you

17  consider this element, as well as any other evidence relating

18  to additional acts of attempted murder or conspiracy to commit

19  murder or drug-dealing by the Bloods that was admitted during

20  the trial."

21          MR. KAYE:  Okay.  Thank you.

22          (Pause)

23          THE COURT:  Let me make sure we're all on the same

24  page, by reading the whole instruction.

25          "The first three elements for Counts One, Two and

IA2KMAT1

1    Three relate to the government's allegations regarding the

2    Bloods gang in general.  Specifically, for Counts One, Two and

3    Three, the government must establish:

4         "On element one, that there was a racketeering

5    enterprise;

6         "On element two, the government must establish that

7    the racketeering enterprise engaged in at least one

8    racketeering activity.  And, here, the alleged activities are

9    attempted murder, conspiracy to commit murder, and

10   drug-dealing, as I defined those crimes.  On the second

11   element, you may consider the evidence relating to the

12   attempted shooting of Isaac Toribio as well as any other

13   evidence relating to additional acts of attempted murder or

14   conspiracy to commit murder by the Bloods or drug-dealing by

15   the Bloods that was admitted during the trial;

16        "On element three, the government must establish that

17   the activities of the Bloods as a racketeering enterprise

18   affected interstate commerce.  When you evaluate these

19   elements, you may consider all of the evidence admitted during

20   the trial."

21        Does that work?

22        MR. RODRIGUEZ:  That works for the government, your

23   Honor.  And if the Court were inclined to provide the jury with

24   that written instruction and send it back to the jury, the

25   government would have no objection to that and would actually

IA2KMAT1

1    think that might be most helpful for them rather than just

2    bringing them out and reading it to them.

3             THE COURT:  Mr. Kaye?

4             MR. KAYE:  I have no preference on whether they get it

5    in writing or otherwise.

6             THE COURT:  Okay.  So, then, we just send it back and

7    not bring them out?

8             MR. RODRIGUEZ:  Yes, Judge.

9             MR. KAYE:  Except the Court said that it was going to

10   ask them if this note from this morning satisfied the note from

11   the end of the day yesterday with regard to the definition,

12   just to be certain we were responding to the note from

13   yesterday.

14            MR. RODRIGUEZ:  Your Honor, our view is that they've

15   shown that they know what to do when they have questions, to

16   send the Court a note.  So if they did have further questions,

17   I think it's clear at this point that they would just send a

18   note with those questions.

19            MR. KAYE:  Judge, nothing is clear unless we ask them

20   if they're clear.  I think we're required, under the law, to

21   respond to each note.  So, as it stands presently, the

22   definitional request from the note we received at the end of

23   the day yesterday has not directly been responded to.

24            THE COURT:  Okay.  I'm fine bringing them out just so

25   it's clear.  If I do bring them out, do you want me to read

IA2KMAT1

1        this and also send it back?

2                  MR. KAYE:  Yes.

3                  MR. RODRIGUEZ:  Yes, Judge.  Thank you.

4                  THE COURT:  Okay.  Let's bring them out.

5                  (Jury present)

6                  THE COURT:  Good morning, ladies and gentlemen.

7                  JURY MEMBERS:  Good morning.

8                  THE COURT:  I know you've been deliberating now, and I

9        thank you for your patience.  I just want to touch base with

10       you about a couple of the notes that you sent out and do my

11       best to respond.

12                 I did receive your note yesterday evening, around

13       5:30, just indicating that you would like to break for the day.

14       You're welcome to send out a note whenever you want to break

15       for the day.  If you want to go a little past 5:00, that's

16       fine, but if anyone has any obligations, you should break, out

17       of respect for any obligations people have.  If you want to go

18       a little later, you're also welcome to but only if everyone is

19       comfortable with that and able to do it.

20                 We did our best to get a computer that works and give

21       you instructions on that.  Does it work now?

22                 JURY MEMBERS:  Yes.

23                 THE COURT:  Did you get a larger monitor in there yet.

24                 JURY MEMBERS:  Yes.

25                 THE COURT:  Great.  We're trying to help with that.

IA2KMAT1

1           And we got you the highlighters?

2           JURY MEMBERS:  Yes.

3           THE COURT:  Great.

4           The last question you asked yesterday was:  "We have

5   some questions about the law as explained, specifically

6   relating to the definition of racketeering.  Who can clarify

7   this for us?"  And I indicated to you that if you had

8   additional questions, you should let me know, and then I got

9   the question this morning.

10          The first thing I want to say is:  I'll get to the

11  question you asked this morning in a second.  As to the

12  question you asked this morning -- and I will ask the

13  foreperson if you could respond -- I want to confirm that there

14  wasn't some additional question but that this was the question

15  you referred to last night?

16          THE FOREPERSON:  Yes.

17          THE COURT:  Okay.  Great.

18          If there's any additional question that I don't

19  respond to, please let me know in another note and I will do my

20  best to answer it.

21          So now the question that I got this morning says:

22  "The jury has a question regarding elements one through three

23  of racketeering activity for Counts One, Two and Three.  It

24  states that the government must prove that (1) the enterprise

25  existed; (2) the Bloods engaged in racketeering; (3) interstate

IA2KMAT1

1    commerce was affected."

2              "Do these apply to the Bloods generally or to the
3    specific alleged crimes/counts?"  Signed the foreperson.

4              I'm going to do my best to respond.  And, also, what
5    I'm reading to you, I'm going to send a copy back so you have
6    it to supplement the other instructions, since you've asked
7    this question.  So if you don't catch every word that I say
8    right now, you'll have a copy.

9              The first three elements for Counts One, Two and Three
10   relate to the government's allegations regarding the Bloods
11   gang in general.  Specifically, for Counts One, Two and Three,
12   the government must establish:

13             On element one, that there was a racketeering
14   enterprise;

15             On element two, the government must establish that the
16   racketeering enterprise engaged in at least one racketeering
17   activity.  And, here, the alleged activities are attempted
18   murder, conspiracy to commit murder, and drug-dealing, as I
19   defined those crimes.  On the second element, you may consider
20   the evidence relating to the attempted shooting of Isaac
21   Toribio, also known as Ike, as well as any other evidence
22   relating to additional acts of attempted murder or conspiracy
23   to commit murder by the Bloods, or drug-dealing by the Bloods
24   that was admitted during the trial;

25             On element three, the government must establish that

IA2KMAT1

1    the activities of the Bloods racketeering enterprise affected

2    interstate commerce.

3            When you evaluate these elements, you may consider all

4    of the evidence admitted during the trial.

5            Again, I'll send this back with you.  If you have any

6    additional questions, please feel free to put them in a note.

7            And we're going to have lunch brought in for you.  I

8    think we got your lunch orders.

9            MR. KAYE:  Can we approach on the side bench?

10           THE COURT:  Yes.

11           (At the sidebar)

12           MR. KAYE:  I think I have an additional request that I

13   forgot to give you, that we also include the "beyond a

14   reasonable doubt" language at some point in this charge.  Maybe

15   you can say:  "Everything that I have just instructed you, you

16   must find" --

17           THE COURT:  "Each element"?

18           MR. KAYE:  -- "establish beyond a reasonable doubt."

19           THE COURT:  Any objection?

20           MR. RODRIGUEZ:  No objection.

21           THE COURT:  Okay, I'll do that.  Thank you.

22           (In open court)

23           THE COURT:  In answering your question just now, I

24   explained, for each of those elements that I referred to, "the

25   government must establish."  And I just want to reiterate, when

IA2KMAT2

1    I say "the government must establish," it must do so beyond a

2    reasonable doubt.  So for each of those elements, you must find

3    that the government has established beyond a reasonable doubt

4    the element.

5            All right?  Thank you very much, folks.  You may

6    continue your deliberation.

7            (Jury not present)

8            THE COURT:  Anything else anybody needed to address?

9            MR. KAYE:  Just if the Court is going to give the

10   jurors that latest instruction in a piece of paper, that the

11   reasonable doubt language be included on the paper.

12           THE COURT:  Any objection?

13           MR. RODRIGUEZ:  No, your Honor.

14           THE COURT:  Okay.  I will add that.

15           MR. KAYE:  Thank you.

16           THE COURT:  Okay.

17           You all are free to go and we'll let you know when you

18   need to come back.  I'll be working here a few minutes.

19           MR. RODRIGUEZ:  Thank you, Judge.

20           (Recess pending verdict)

21           THE COURT:  So you all have seen the note asking about

22   the Ciara Edwards testimony?

23           MR. RODRIGUEZ:  Yes, Judge.

24           MR. KAYE:  Yes, your Honor.

25           THE COURT:  And I understand that you have not reached

IA2KMAT2

agreement on what to send in?

          MR. RODRIGUEZ:  We had an agreement, your Honor, but

then, upon Mr. Kaye rereading the note, he decided that he no

longer wanted to abide by that agreement.  We reached a set of

transcripts that we thought was fair and responsive, and now

Mr. Kaye would like to take a much more narrow view of what is

fair and responsive.  I think his objection is to the beginning

of the government's proposal.

          What the note is requesting is her testimony with

regards to her recollection of going to get the gun.  So where

we started our proposed response is:  Who told her to get the

gun and why.  We think it's a natural place to start testimony

regarding her going to get the gun.

          We've also included, because Mr. Kaye wanted it, his

cross-examination with respect to her lying in the grand jury

about that.  We don't think, if we're going to take an overly

narrow view of what this note is requesting, that that would be

appropriate, but we agreed to it because we thought we had a

fair and responsive package of transcripts to propose, but that

doesn't seem to be the case.

          But we think that what we've handed your Honor is

fair, it's responsive, it goes to all what the jury seems to be

asking for.  So if your Honor is inclined to take a much more

narrow view, along the lines that Mr. Kaye is suggesting, then

we would propose eliminating the questioning about what she

IA2KMAT2

1    testified to in the grand jury, if we're going to limit it to

2    just her current recollection, reading this very narrowly, who

3    she went with and where she went.

4              THE COURT:  Mr. Kaye?

5              MR. KAYE:  Judge, all I'm asking is that on page 479,

6    we start at line 6, not at line 2.  "What happened when DeJesus

7    showed up?" I don't think that that's necessary, that

8    conversation, because the government is still getting

9    conversation between the two, if we start at line 6.

10             Arguably, neither excerpt is directly relevant because

11   they're asking about going to get the gun.  That's prior to

12   going to get the gun.  And if we have to lose my

13   cross-examination regarding the grand jury, that's okay.  Then

14   we can just both take a very narrow view of it.

15             THE COURT:  So your only issue is with the lines

16   before line 6?

17             MR. KAYE:  Right.  We're in agreement generally -- I

18   completely agree that if you look at this narrowly, then

19   perhaps my cross on the grand jury is not directly responsive,

20   but I'm getting that, I'm willing to give up a little

21   something, but I don't think that 479, lines 2 to 5 needs to be

22   in there, because the government gets that.  It's repeated

23   again on 479 from lines 6 to 9.

24             MR. RODRIGUEZ:  Your Honor, if I'm hearing Mr. Kaye

25   correctly, his only proposal is that we start on 479 at line 6,

IA2KMAT2

1    which is me repeating or trying to clarify the previous answer,

2    so I think that's not a great place to start.  But if we're

3    going to move this along and, as a result, not include

4    Mr. Kaye's cross-examination of Ms. Edwards about what she

5    testified to in the grand jury, then the government would have

6    no objection to that.

7              MR. KAYE:  No, we are including that.

8              THE COURT:  I thought you just said you would be

9    willing not to include the grand jury?

10             MR. KAYE:  No, no, no.  I said, originally, I could

11   understand both parties taking a narrow view, which might

12   exclude my cross of her on the grand jury but would also

13   exclude all of this.  But I'm willing to put some of this, of

14   what the government wants in, to ensure that the grand jury

15   topic gets put in.  My only objection was to having it read

16   twice, essentially, which is lines 2 to 5.  If that's not

17   acceptable, then I'll take a closer look at it and I will see

18   what else, in a narrower view, I think is not directly

19   responsive to the note.  That's fine too.

20             MR. RODRIGUEZ:  Your Honor, just one more point on

21   this:  The reason why I said starting where I would start, on

22   479, line 6, you've instructed the jury that the questions from

23   the lawyers are not evidence, and so they should get that prior

24   answer, which is in evidence.

25             I think it's clear that Mr. Kaye doesn't want it

IA2KMAT2

1    because it implicates his client, but this is a fair and

2    responsive set of transcripts to send back to the jury.  We

3    should send it back so they can continue their deliberations.

4           THE COURT:  I agree.  The question is her recollection

5    of going to get the gun.  I think this is responsive.  So I

6    think this is the right set of materials to send.

7           MR. RODRIGUEZ:  Thank you, Judge.

8           THE COURT:  You have copies?

9           MR. RODRIGUEZ:  I provided Mr. Hampton a copy.  I'm

10   happy to provide another copy or however the Court wants --

11          THE COURT:  Do you have a view as to whether it should

12   be 12 copies or one?

13          MR. RODRIGUEZ:  Our thought on why it should be one is

14   just because we've sent one of the supplemental instruction, so

15   continuing a practice of sending additional materials, one

16   copy, back there.

17          THE COURT:  All right.  That's fine.  We can send them

18   my copy.

19          MR. RODRIGUEZ:  Thank you, Judge.

20          MR. KAYE:  Does the Court have any thoughts on the

21   balance of the note, the 5:00 o'clock departure?

22          THE COURT:  Just that I'll let them go at

23   5:00 o'clock --

24          MR. KAYE:  Thank you.

25          THE COURT:  -- which I assume means they're fine to

IA2KMAT3

1  come back tomorrow.

2          Okay.  Thank you.  We'll keep you posted.

3          MR. RODRIGUEZ:  Judge, I'm sorry, should we put on the

4  record the specific transcript pages and lines that we are send

5  back?

6          THE COURT:  Yes, we probably should.

7          You have them, right?

8          MR. RODRIGUEZ:  I do.

9          It begins on page 478 of the transcript, line 24, and

10  it goes through page 480, line 14.  That's the first excerpt.

11          The second excerpt begins on page 490, line 1, through

12  page 492, line 6.

13          The third excerpt begins on page 558, line 7, goes

14  through 559, line 9.  There's an exchange with the Court that

15  is redacted.  It resumes at 559, line 14, continues through

16  page 561, line 12.  The.

17          The final excerpt begins on 598, line 16, and goes

18  through 599, line 12.

19          THE COURT:  Okay.  Thank you.

20          MR. RODRIGUEZ:  Thank you, Judge.

21          (Recess pending verdict)

22          THE COURT:  Are we ready to let the jury go?

23          MR. KAYE:  The defense is ready.

24          THE COURT:  All right.

25          MR. RODRIGUEZ:  Yes, your Honor.

IA2KMAT3

```
1              THE COURT:  All right.
2              (Jury present)
3              THE COURT:  Good evening, ladies and gentlemen.
4              JURY MEMBERS:  Good evening.
5              THE COURT:  I just wanted to acknowledge that I did
6   receive your note from 3:00 o'clock today, asking for certain
7   testimony of the witness Ciara Edwards, and we provided a copy
8   of the testimony of that witness which I determined was
9   responsive to the question.
10             And it also said:  "P.S.  The jury would like to break
11  for the day at 5:00 p.m.," which is fine.  And it is
12  5:00 o'clock, so I am going to let you go for the day, with a
13  reminder that we will continue tomorrow morning at the same
14  time.  Try to come in around 9:15, definitely by 9:30 if you
15  can.  And, once again, if you would please not discuss the case
16  tonight and not begin deliberations until all 12 of you are
17  present in the jury room, at which time the foreperson can just
18  send out a note saying, "We are all here, and we're beginning
19  to deliberate."  Please make sure you don't deliberate before
20  that time.  All right?
21             Thank you, everybody, for your patience and hard work
22  in deliberating.  And we'll see you all tomorrow morning.  Have
23  a good night.
24             JUROR:  Good night.
25             (Jury not present)
```

IA2KMAT3

1           THE COURT:  Have a good night, everybody.

2           MR. KAYE:  You too, your Honor.

3           MR. RODRIGUEZ:  Thank you.

4           (Adjourned to October 3, 2018 at 9:30 a.m.)

5                              *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25